# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

FILED
OCT 08 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. **'19 MJ4400**
One (1) Black Lanix Cellphone )
Model: U210 )
IMEI: 358911081712248 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A incorporated herein by reference

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960 | Importation of a Controlled Substance |

The application is based on these facts:
See Attached Affidavit of Special Agent Edgar Aguirre incorporated herein by reference

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Edgar Aguirre, Special Agent HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: 10/8/19

_____
Judge's signature

City and state: San Diego, Califonria

Hon. U.S. Magistrate Judge Linda Lopez
Printed name and title



# AFFIDAVIT

I, Special Agent Edgar Aguirre, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

>One (1) Black Lanix Cellphone
>Model: U210
>IMEI: 358911081712248
>
>One (1) Grey Motorola Cellphone
>Model: XT1921-3
>IMEI: 351841098046677
>(**"Target Devices"**)

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960 and 963, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Marcial CARRILLO-SERNA ("Defendant") for importing approximately 52.26 kilograms (115.21 pounds) of methamphetamine from Mexico into the United States. *See U.S. v. Carrillo-Serna*, Case No. 19-mj-3559-BGS (S.D. Cal.) at ECF No. 1 (Complaint). The Target Devices are currently in the possession of the Department of Homeland Security and are presently stored at 2255 Niels Bohr Ct. San Diego, California 92154.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I have been employed as a Special Agent with Homeland Security Investigations (ICE-HSI) since July 2018. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal

Law Enforcement Training Center in Glynco, Georgia.

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8.      This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a.   tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.      On August 21, 2019, at approximately 3:00 a.m., defendant Marcial CARRILLO-Serna ("Defendant") applied for permission to enter the United States at the Otay Mesa Port of Entry. Defendant was the driver and sole occupant of a 1999 Chevrolet S10. CBP Officer Arcia's K-9 unit alerted to the undercarriage of the Chevrolet S-10, and Officer De Lean saw tampering where the K-9 had alerted. Defendant was referred for secondary inspection, and Customs and Border Protection Officers discovered 83 packages concealed within the gas tank, driver seat, passenger seats, passenger side pillars, driver side rear quarter panel, and passenger side rear quarter panel of Defendant's vehicle. The

3

83 packages weighed approximately 43.18 kg (95.19 lbs.). Upon further inspection of the Chevrolet S10 later that evening, CBP Officer Jimenez discovered an additional 18 packages that weighed approximately 9.08 kg (20.02 lbs.). The combined total, which field-tested positive as methamphetamine, was 101 packages, weighing approximately 52.26 kilograms (115.21 lbs.). Defendant was subsequently arrested and the **Target Devices** were seized. (The CBP Officers' reports do not indicate whether the **Target Devices** were seized directly from CARRILLO or from the Chevrolet S10; however, in my training and experience, I know that when a person is taken to the security office and their car searched, CBP will gather all the personal effects from the person and secure them. If the person is arrested, those items are seized.)

10. In light of the above facts, and based upon my own experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, there is probable cause to believe that Defendant was using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States.

11. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for items listed in Attachment B for the time period from June 22, 2019, up to and including August 22, 2019, which was the day following CARRILLO's arrest.

///

///

4

## METHODOLOGY

12. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

13. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

14. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

15. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

16. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Devices will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963.

17. Because the Target Devices were seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Devices. As stated above, I believe that the appropriate date range for this search is from June 22, 2019, up to and including August 22, 2019.

18. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Edgar Aguirre
Homeland Security Investigations

Subscribed and sworn to before me this __8th__ day of October, 2019.

_____
Hon. Linda Lopez
United States Magistrate Judge

6

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

>One (1) Black Lanix Cellphone
>Model: U210
>IMEI: 358911081712248
>
>One (1) Grey Motorola Cellphone
>Model: XT1921-3
>IMEI: 351841098046677
>
>**("Target Devices")**

The **Target Devices** are currently in the possession of the Department of Homeland Security and are presently stored at 2255 Niels Bohr Ct. San Diego, CA 92154.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 22, 2019 up to and including August 22, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.